# EXHIBIT 1

AO 88A  (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### Middle District of North Carolina

| | |
|---|---|
| JAMES DILLON | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No.   1:13-CV-897 |
| BMO HARRIS BANK, N.A., et al. | ) |
| | ) |
| *Defendant* | ) |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:                                 MNE Services, Inc.
                    3531 P Street NW, Miami, OK 74355
*(Name of person to whom this subpoena is directed)*

☑ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action.  If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:
See Exhibit A

| Place:   Aloft Tulsa Downtown<br>          200 Civic Center, Tulsa, OK 74103 | Date and Time:<br><br>          09/21/2015 9:30 am |
|---|---|

The deposition will be recorded by this method:     audiovisual and/or stenographic means

☑ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:  See Exhibit B

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:    08/13/2015

                    *CLERK OF COURT*
                                                    OR      F / _____

_____                              _____
*Signature of Clerk or Deputy Clerk*                 *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
James Dillon
_____ , who issues or requests this subpoena, are:
F. Hill Allen, Tharrington Smith, LLP, PO Box 1151, Raleigh, NC 27602, hallen@tharringtonsmith.com, 919-821-4711

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No. 1:13-CV-897

## PROOF OF SERVICE

### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

      I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

      ☐ I served the subpoena by delivering a copy to the named individual as follows: _____

_____

_____ on *(date)* _____ ; or

      ☐ I returned the subpoena unexecuted because: _____

_____ .

      Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

      $ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

      I declare under penalty of perjury that this information is true.

Date: _____     _____

                                            *Server's signature*

                       _____

                                            *Printed name and title*

                       _____

                                            *Server's address*

Additional information regarding attempted service, etc.:

AO 88A  (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1) *For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
(i) is a party or a party's officer; or
(ii) is commanded to attend a trial and would not incur substantial expense.

**(2) *For Other Discovery.*** A subpoena may command:
(A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
(B) inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1) *Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2) *Command to Produce Materials or Permit Inspection.***
(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3) *Quashing or Modifying a Subpoena.***

(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;
(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or
(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1) *Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) *Claiming Privilege or Protection.***
(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**EXHIBIT A**

.

## <u>EXHIBIT A: DEPOSITION TOPICS</u>

## <u>DEFINITIONS</u>

The following definitions apply to the Deposition Topics set forth below:

1.     "You," "yours," "MNE Services" or "USFastCash" means "MNE Services, Inc." and any and all other person(s) acting on its behalf or at its direction or control, including, but not limited to, subsidiary companies, present or former employees, staff personnel, agents, servants, consultants, investigators, contractors or subcontractors, advisors, counsel, accountants, representatives, or any other person compensated by MNE Services, regardless of whether such compensation is based in whole or in part on commission or some other measure of performance or otherwise and regardless of whether considered or classified as independent contractors.

2.     "ACH," "ACH Network" or "Automated Clearing House Network" means the mainstream electronic payments system used by You to originate debits and credits for Originators.

3.     "AMG Services" means AMG Services, Inc., and any and all other person(s) acting on its behalf or at its direction or control, including, but not limited to, subsidiary companies, present or former employees, staff personnel, agents, servants, consultants, investigators, contractors or subcontractors, advisors, counsel, accountants, representatives, or any other person compensated by AMG Services, regardless of whether such compensation is based in whole or in part on commission or some other measure of performance or otherwise and regardless of whether considered or classified as independent contractors.

4.     "Bay Cities" means Bay Cities Bank, and any and all other person(s) acting on its behalf or at its direction or control, including, but not limited to, subsidiary companies, present or former employees, staff personnel, agents, servants, consultants, investigators, contractors or subcontractors, advisors, counsel, accountants, representatives, or any other person compensated by Bay Cities, regardless of whether such compensation is based in whole or in part on commission or some other measure of performance or otherwise and regardless of whether considered or classified as independent contractors.

5.     "Communication(s)" means the transmission, sending, or receipt of information of any kind (in the form of facts, ideas, inquiries, or otherwise), by one or more persons and/or between two or more persons by or through any means including, but not limited to, speech, writings, language (machine, foreign, or otherwise), computer electronics of any kind (including, but not limited to, e-mail, instant messaging, or other computer linkups), magnetic tape, videotape, photographs, graphs, symbols, signs, magnetic or optical disks, floppy disks, compact discs, CD-ROM discs, other removable or transportable media, sound, radio, or video signals, telecommunication, telephone, teletype, telexes, telecopies, facsimile, telegram, microfilm, microfiche, photographic film of all type, or other media of any kind.

6.     "NACHA" (formerly the National Automated Clearing House Association) means the association that manages the development, administration, and governance of the ACH Network.

2

7.     "ODFI" means an originating depository financial institution that originates debit and credit entries initiated by Originators or Third-Party Senders on the ACH Network.

8.     "Origination Agreement" means the contractual agreement between an ODFI and an Originator or a Third-Party Sender to originate debit and credit entries on the ACH Network.

9.     "Originator" means any party that initiates entries into the ACH Network through a relationship with an ODFI or a Third-Party Sender initiating entries on its behalf.

10.    "Regulatory Agency" means any public authority or government agency responsible for exercising authority over financial institutions in any manner, including, but not limited to, the Comptroller of the Currency (OCC), Federal Deposit Insurance Corporation (FDIC), Federal Reserve System (FRS), National Credit Union Administration (NCUA), Office of Thrift Supervision (OTS), and all state attorneys general and financial institution regulatory agencies.

11.    "Relating to," "refer to," "with respect to," "reflect," "regarding," "pertaining to" or "concerning" means mentioning, discussing, reflecting, containing, consisting of, evidencing, embodying, stating, dealing with, making reference or relating to in any way, or having any logical or factual connection with the subject matter identified in a discovery request.

12.    "Third-Party Sender" means a third-party service provider on the ACH Network that acts as an intermediary between the ODFI and the Originator by initiating

3

entries into the ACH Network on behalf of the Originator through an ODFI pursuant to an Origination Agreement with the ODFI.

## DEPOSITION TOPICS

1.     MNE Services' corporate structure including descriptions of the roles and responsibilities of MNE Services' officers.

2.     MNE Services' ownership structure including all persons and entities that have or had a financial interest in MNE Services' consumer lending, loan servicing, and/or debt collection businesses.

3.     MNE Services' relationship with AMG Services, Christopher D. Muir, the Miami Tribe of Oklahoma, and/or any related individuals or entities.

4.     The Declaration of Christopher D. Muir submitted in this litigation (Doc. 123-1).

5.     Bay Cities' status as a purported "third-party beneficiary" of the consumer loan agreements between Plaintiff James Dillon and MNE Services.

6.     Bay Cities' status as a purported "servicer" of Plaintiff James Dillon's loan with MNE Services.

7.     Bay Cities' status as a purported "agent" of MNE Services.

8.     MNE Services' assertion in in its consumer loan agreement that the agreement "shall be governed by all applicable federal laws and all laws of the Miami Tribe of Oklahoma, the regulatory authority of MNE Services, Inc. dba USFastCash, regardless of the state or jurisdiction in which You may reside, and Your electronic signature below is your consent to the exclusive exercise of regulatory and adjudicatory authority of the

4

Miami Tribe of Oklahoma over all matters related to this Note and Your account, expressly and forever forsaking any other jurisdiction which either party may claim by virtue of any reason, including residency."

9.      The laws, regulatory and adjudicatory authority of the Miami Tribe of Oklahoma as referenced in MNE Services' consumer loan agreement.

10.     The regulatory authority of MNE Services as referenced in MNE Services' consumer loan agreement.

11.     Distribution of MNE Services' revenues and profits.

12.     MNE Services and/or AMG Services' consumer lending, loan servicing, and/or debt collection business practices and procedures.

13.     MNE Services' consumer loan transactions, correspondence, and all agreements with Plaintiff James Dillon.

14.     MNE Services' record-keeping systems for customer account information.

15.     MNE Services' consumer lending website interface and operation.

16.     MNE Services' consumer loan agreement, including its formation and application in consumer disputes.

17.     Consumers' ability to negotiate the terms of MNE Services' consumer loan agreement, including specific examples.

18.     Statistics on the number of consumers who have opted out of the mandatory arbitration provision in MNE Services' consumer loan agreement, including specific examples.

5

19.    MNE Services' use of the ACH Network to initiate debit entries from consumers' bank accounts.

20.    MNE Services' relationship with ODFIs in the ACH Network, including Generations.

21.    MNE Services' role as Originator in the ACH Network.

22.    MNE Services' Origination Agreements with ODFIs or Third-Party Senders on the ACH Network.

23.    MNE Services' relationship with any Third-Party Senders that operate on MNE Services' behalf in the ACH Network.

24.    The legality of MNE Services' consumer lending, loan servicing, and/or debt collection businesses.

25.    Consumer complaints about MNE Services' consumer lending, loan servicing, and/or debt collection practices.

26.    The law and jurisdiction of the Miami Tribe of Oklahoma as it relates to consumer lending, arbitration, and tribal court procedure and process.

27.    MNE Services' reporting of consumer loan information to credit bureaus.

28.    The results of every arbitration conducted pursuant to a dispute arising out of MNE Services' consumer loan agreement, including for each action (a) the party that initiated the arbitration (MNE Services or consumer); (b) the case number; (c) the date of the arbitration; (d) the names of the parties involved; (e) the specific nature of the dispute; (f) the arbitrator(s) used; (g) the outcome of the arbitration; and (h) whether the arbitration award was affirmed or rejected by a tribal court.

6

29.     The results of every tribal court proceeding that in any way relates to a consumer lending dispute, including affirmance or rejection of an arbitration award, arising out of MNE Services' consumer loan agreement.

30.     MNE Services' litigation and settlement with the Federal Trade Commission as a result of deceptive lending practices.

31.     Communications with NACHA relating to compliance with NACHA Operating Rules and/or warnings of potential non-compliance with the NACHA Operating Rules.

32.     Communications with any U.S. federal executive department including the Department of Justice relating to MNE Services' consumer lending, loan servicing, and/or debt collection practices.

33.     Communications with any state or federal Regulatory Agency relating to MNE Services' consumer lending, loan servicing, and/or debt collection practices.

**EXHIBIT B**

## EXHIBIT B: DOCUMENTS TO BE PRODUCED

## DEFINITIONS

1.      "You," "yours," "MNE Services" or "USFastCash" means "MNE Services, Inc." and any and all other person(s) acting on its behalf or at its direction or control, including, but not limited to, subsidiary companies, present or former employees, staff personnel, agents, servants, consultants, investigators, contractors or subcontractors, advisors, counsel, accountants, representatives, or any other person compensated by MNE Services, regardless of whether such compensation is based in whole or in part on commission or some other measure of performance or otherwise and regardless of whether considered or classified as independent contractors.

2.      "ACH," "ACH Network" or "Automated Clearing House Network" means the mainstream electronic payments system used by You to originate debits and credits for Originators.

3.      "AMG Services" means AMG Services, Inc., and any and all other person(s) acting on its behalf or at its direction or control, including, but not limited to, subsidiary companies, present or former employees, staff personnel, agents, servants, consultants, investigators, contractors or subcontractors, advisors, counsel, accountants, representatives, or any other person compensated by AMG Services, regardless of whether such compensation is based in whole or in part on commission or some other measure of performance or otherwise and regardless of whether considered or classified as independent contractors.

4.    "Bay Cities" means Bay Cities Bank, and any and all other person(s) acting on its behalf or at its direction or control, including, but not limited to, subsidiary companies, present or former employees, staff personnel, agents, servants, consultants, investigators, contractors or subcontractors, advisors, counsel, accountants, representatives, or any other person compensated by Bay Cities, regardless of whether such compensation is based in whole or in part on commission or some other measure of performance or otherwise and regardless of whether considered or classified as independent contractors.

5.    "Communication(s)" means the transmission, sending, or receipt of information of any kind (in the form of facts, ideas, inquiries, or otherwise), by one or more persons and/or between two or more persons by or through any means including, but not limited to, speech, writings, language (machine, foreign, or otherwise), computer electronics of any kind (including, but not limited to, e-mail, instant messaging, or other computer linkups), magnetic tape, videotape, photographs, graphs, symbols, signs, magnetic or optical disks, floppy disks, compact discs, CD-ROM discs, other removable or transportable media, sound, radio, or video signals, telecommunication, telephone, teletype, telexes, telecopies, facsimile, telegram, microfilm, microfiche, photographic film of all type, or other media of any kind.

6.    "Document" and "Documents" should be interpreted in their broadest possible sense within the meaning of Rule 34(a) of the Federal Rules of Civil Procedure and shall mean the complete original (or complete copy where the original is unavailable) and each non-identical copy (where different from the original because of notes made on

the copy or otherwise) of any writing or record, as well as any attachment thereto or enclosure therewith, including but not limited to all written, typewritten, handwritten, printed, computerized, electronically created or stored, or graphic matter of any kind or nature, however produced or reproduced; any form of collected data for use with electronic data processing equipment; any physical object or thing, and any mechanical or electronic visual or sound recordings now or formerly in your possession, custody or control or known to you regardless of physical location. The term "document" includes, but is not limited to, e-mails, facsimiles, envelopes, voice-mail messages, transcripts, invoices, purchase orders, checks, receipts, letters and other correspondence, offers, contracts, agreements, bids, proposals, licenses, permits, reports to government agencies, ledgers, accounts receivable, accounts payable, account statements, financial statements, reports of any kind, minutes of meetings, sales estimates, sales reports, memoranda, notes, spreadsheets, calendar or diary entries, agendas, bulletins, graphs, charts, maps, photographs, drawings, surveys, data, price lists, summaries, telegrams, teletypes, computer printouts, magnetic tapes, discs, drives, electronic or hard-copy files, audio or video tapes, microfilm, and microfiche.

7.    "NACHA" (formerly the National Automated Clearing House Association) means the association that manages the development, administration, and governance of the ACH Network.

8.    "ODFI" means an originating depository financial institution that originates debit and credit entries initiated by Originators or Third-Party Senders on the ACH Network.

3

9.     "Origination Agreement" means the contractual agreement between an ODFI and an Originator or a Third-Party Sender to originate debit and credit entries on the ACH Network.

10.    "Originator" means any party that initiates entries into the ACH Network through a relationship with an ODFI or a Third-Party Sender initiating entries on its behalf.

11.    "Regulatory Agency" means any public authority or government agency responsible for exercising authority over financial institutions in any manner, including, but not limited to, the Comptroller of the Currency (OCC), Federal Deposit Insurance Corporation (FDIC), Federal Reserve System (FRS), National Credit Union Administration (NCUA), Office of Thrift Supervision (OTS), and all state attorneys general and financial institution regulatory agencies.

12.    "Relating to," "refer to," "with respect to," "reflect," "regarding," "pertaining to" or "concerning" means mentioning, discussing, reflecting, containing, consisting of, evidencing, embodying, stating, dealing with, making reference or relating to in any way, or having any logical or factual connection with the subject matter identified in a discovery request.

13.    "Third-Party Sender" means a third-party service provider on the ACH Network that acts as an intermediary between the ODFI and the Originator by initiating entries into the ACH Network on behalf of the Originator through an ODFI pursuant to an Origination Agreement with the ODFI.

4

## INSTRUCTIONS

1.      The words "and" and "or" shall be construed conjunctively or disjunctively as necessary to call for the broadest possible construction and to bring within the scope of this request any information that may otherwise be construed to be outside its scope.

2.      The use of the singular form of any word shall include the plural and vice-versa.

3.      The present tense includes the past and future tenses. Words in the masculine, feminine or neuter form shall include each of the other genders.

4.      Documents that are in paper form or that constitute other physical objects from which recorded information may be visually read, as well as audio or video tapes and similar recordings, should be produced in their original form or in copies that are exact duplicates of the originals. Computer files and similar electronic records should be produced in a readable form mutually agreed upon by the parties.

5.      Each document shall be produced in its entirety, without abbreviation or expungement, and including both the front and back of any document with printed matter or handwriting on both sides. Requests for documents shall be deemed to include requests for any and all transmittal sheets, cover letters, exhibits, enclosures, or any other annexes or attachment to the documents, in addition to the documents themselves.

6.      Documents should be produced either (a) as they are kept in the ordinary course of business, complete with the original file folders, binders, or other containers in which they are stored (or legible copies of the labels from those folders, binders, or containers), or, alternatively, (b) organized according to the document request(s) to which

5

they are responsive. If you elect the latter mode of production, each document or set of documents from a particular file, binder, or other container should be accompanied by a legible copy of the label from that container or some other reliable indicator of the file from which it was taken.

7.     Where the custodian of any document is unclear from the face of the document, you should supply a log identifying the custodian(s) for each such document.

8.     If you object to any portion of any request, you should identify the portion to which you object, state the basis for the objection, and respond to the remainder. If any portion of any document is responsive to any request, the entire document shall be produced.

9.     You are required, in responding to these document requests, to obtain and produce all documents in your possession, available to you, or under your control, or in the possession of, available to, or under the control of your attorneys or agents.

10.     Where a specified document is requested, such request shall not be interpreted to exclude any other documents where it is known that such other documents contain information relevant to the request.

11.     If any of the requested documents were but are no longer in your possession or subject to its control, you shall state: (i) what disposition was made of it and when; (ii) the reasons for such disposition; (iii) the present or last known location of that document; and (iv) the names and addresses of all persons with knowledge of the contents of that document and/or its disposition.

12.     Each request that seeks documents relating in any way to communications

to, from, or within a business and/or corporate or governmental entity, it is hereby designated to mean, and should be construed to include, all documents relating to communications by and between representatives, employees, agents, attorneys, and/or servants of the business and/or corporate and/or governmental entity.

## DOCUMENTS TO BE PRODUCED

1.      All Origination Agreements between MNE Services and Bay Cities (or a Third-Party Sender acting on behalf of MNE Services).

2.      All Documents and Communications in MNE Services' possession, custody or control relating to the law and rules of the Miami Tribe of Oklahoma that would be applicable to an arbitration between Plaintiff James Dillon and any other person or entity premised in whole or in part on claims arising from his loans from MNE Services.

3.      All Documents and Communications reflecting the laws, regulatory and adjudicatory authority of the Miami Tribe of Oklahoma as referenced in MNE Services' consumer loan agreement.

4.      All Documents and Communications reflecting the regulatory authority of MNE Services as referenced in MNE Services' consumer loan agreement.

5.      All Documents and Communications reflecting MNE Services' corporate structure including descriptions of the roles and responsibilities of MNE Services' officers.

6.      All Documents and Communications reflecting MNE Services' ownership structure including all persons and entities that have a financial interest in MNE Services' consumer lending, loan servicing, and/or debt collection businesses.

7.      All Documents and Communications reflecting MNE Services' relationship with AMG Services, Christopher D. Muir, the Miami Tribe of Oklahoma, and/or any related individuals or entities.

8.      All Documents and Communications reflecting the distribution of revenue and/or profits derived from MNE Services' consumer lending, loan servicing, and/or debt collection businesses.

9.      All Documents and Communications supporting or rejecting Bay Cities' status as a purported "third-party beneficiary" of the loan agreement between MNE Services' and James Dillon.

10.     All Documents and Communications supporting or rejecting Bay Cities' status as a purported "servicer" of Plaintiff James Dillon's loan with MNE Services.

11.     All Documents and Communications supporting or rejecting Bay Cities' status as a purported "agent" of MNE Services.

12.     All Documents and Communications between MNE Services and Bay Cities relating to James Dillon and/or this litigation.

13.     All Documents and Communications between MNE Services and Bay Cities relating to the preparation and content of the Christopher D. Muir declaration submitted in this litigation (Doc. 153-1).

8

14.     All Documents and Communications between MNE Services and James Dillon, including consumer loan agreements, correspondence, loan servicing, and debt collection communications.

15.     All Documents and Communications reflecting MNE Services' and/or related companies' debt collection procedures.

16.     All Documents and Communications reflecting MNE Services' record-keeping systems for customer account information, including chain of custody at every step of the loan-making process.

17.     All Documents and Communications relating to the legality and/or enforceability of MNE Services' consumer loan agreements.

18.     All Documents and Communications relating to MNE Services' reporting of consumer loan information to credit bureaus.

19.     All Documents and Communications reflecting exactly how many consumer complaints MNE Services receives annually relating to its consumer lending practice.

20.     All Documents and Communications reflecting exactly how many consumers have opted out of the mandatory arbitration provision in MNE Services' consumer loan agreement.

21.     All Documents and Communications reflecting exactly how many consumers have successfully negotiated any terms set forth in MNE Services' consumer loan agreement.

22.     All Documents and Communications reflecting exactly how many consumers have initiated and completed arbitration proceedings with MNE Services pursuant to a dispute arising out of Western Sky's consumer loan agreement.

23.     All Documents and Communications reflecting the results of every arbitration conducted pursuant to a dispute arising out of MNE Services' consumer loan agreement, including for each action (a) the party that initiated the arbitration (MNE Services or consumer); (b) the case number; (c) the date of the arbitration; (d) the names of the parties involved; (e) the specific nature of the dispute; (f) the arbitrator(s) used; (g) the outcome of the arbitration; and (h) whether the arbitration award was affirmed or rejected by a tribal court.

24.     All Documents and Communications reflecting every Miami Tribe of Oklahoma decision or proceeding that in any way relates to a consumer lending dispute, including affirmance or rejection of an arbitration award, arising out of a MNE Services' consumer loan agreement.

25.     All Documents and Communications relating to MNE Services' formation of the contractual language included in its consumer loan agreements.

26.     All Documents and Communications reflecting the rules and procedures of the Miami Tribe of Oklahoma, including the judicial structure and processes and procedures for election or appointment of tribal court judges.

27.     All Documents and Communications between you and any U.S. federal executive department including the Department of Justice relating to MNE Services'v consumer lending, loan servicing, and/or debt collection businesses.

28.    All Documents and Communications between you and any state or federal Regulatory Agency relating MNE Services' consumer lending, loan servicing, and/or debt collection businesses.

29.    All Documents and Communications with NACHA relating to compliance with NACHA Operating Rules and/or warnings of potential non-compliance with the NACHA Operating Rules.